■ FAMILY AFFAIR HAIRCUTTERS, INC., Respondent, v NINA DETLING, Appellant.

Defendant, a licensed hairdresser, commenced employment with plaintiff at its salon in Shirley in October 1981. In April 1983 defendant and plaintiff entered into an employment agreement which contained, *inter alia,* a prohibition against disclosure of plaintiff's customer list and a covenant not to compete with plaintiff after termination of defendant's employment. Specifically, the employment agreement provided, in relevant part, as follows:

"4. DISCLOSURE OF INFORMATION: The Employee recogni[z]es and acknowledges that the list of the Employer[']s customers, as it may exist from time to time, is a valuable, special and unique asset of the Employer[']s business. Accordingly, the Employee will not, during or after the term of his employment, disclose the list of the Employer[']s customers or any part thereof to any other person, firm, corporation or any other entity for any [reason] or purpose whatsoever * * *

"6. TERMINATION OF EMPLOY: Either the Employer or the Employee may without cause terminate this Agreement on one week[']s notice to the other party. Upon such termination, [if] the Employee is employed hereunder for a period of [thirty] (30) days or more and the Agreement is thereafter terminated by

either the Employer or the Employee, the following restrictive covenant shall be applicable: for a period of [two] (2) years after the termination of this Agreement, the Employee will not within a radius of five (5) miles from the present place of employment, directly or indirectly, be employed by any haircutting shop, beauty shop or beauty salon or in any way own, manage, operate, control, participate in or in any way be connected in any manner with any business similar to the type of business conducted by the Employer at the time of the termination of this Agreement. In the [event] of any actual or threatened breach by the Employee of the provisions of this paragraph, the Employer shall be entitled to an injunction restraining such acts on the part of the Employee. The Employer may also be entitled to pursue any other remedies available to the Employer for such breach or threatened breach including the recovery [of] damages".

Defendant left plaintiff's employ in January 1984 and began to work for a competitor of plaintiff whose establishment was also located in Shirley, approximately two miles away.

Thereafter, plaintiff commenced the instant action against defendant. In its first cause of action, plaintiff sought a permanent injunction prohibiting defendant from working for the plaintiff's competitor. In a second cause of action, plaintiff alleged that it had suffered "pecuniary damage" from defendant's employment with its competitor. Plaintiff also alleged in its third and fourth causes of action, respectively, that (1) defendant, during her employment with plaintiff, had willfully removed approximately 300 "perm cards" which constituted the only list that plaintiff had of its clients' names, telephone numbers and addresses, and (2) defendant was presently soliciting the clients of plaintiff "for the purpose of generating business" for plaintiff's competitor and the defendant. With respect to these latter two causes of action, plaintiff sought damages as well as a directive to defendant to return the " 'perm cards' or the information contained thereon".

In her answer, defendant interposed a general denial and asserted numerous affirmative defenses including, *inter alia,* (1) that she signed the employment agreement "under the threat and duress of being fired", and (2) that the employment agreement was "unreasonable and unconscionable".

Upon commencing this action, plaintiff moved for (1) a preliminary injunction enjoining defendant from continuing her employment as a haircutter at plaintiff's competitor and "from contacting clients of [the plaintiff and] soliciting business from them", and (2) "an order directing the defendant to return certain customer cards belonging to the plaintiff".

In her opposing papers, defendant denied stealing plaintiff's customer cards or soliciting plaintiff's customers. Defendant also alleged without contradiction that (1) her prior position with plaintiff had already been filled and (2) plaintiff operated five shops throughout Suffolk County and averaged a gross income of between $2,000 to $2,500 per week at the salon in Shirley. Finally, defendant set forth in detail her own modest financial circumstances which she claimed would become perilous if she was forced, through a preliminary injunction, to cease working in the area.

Special Term granted plaintiff's motion for a preliminary injunction to the extent of "enjoining the defendant * * * from continuing her employment" with plaintiff's competitor and "from contacting clients of [the plaintiff and] soliciting business from them". However, Special Term denied that branch of plaintiff's motion which sought the return of certain customer cards, on the ground that "[t]here is no convincing evidence that the defendant took any of the customer cards with her when her employment ended".

It is well settled that in order to prevail on a motion for a preliminary injunction the movant has the burden of demonstrating "(1) a likelihood of ultimate success on the merits; (2) irreparable injury absent the granting of the preliminary injunction; and (3) that a balancing of equities favors [the movant's] position" (*Gambar Enters. v Kelly Servs.*, 69 AD2d 297, 306, and cases cited therein).

Viewed within this framework, Special Term abused its discretion in granting that branch of plaintiff's motion which sought a preliminary injunction.

The first requirement, i.e., likelihood of success, has been described as follows: "A party is not entitled to a temporary injunction, unless the right is plain from the undisputed facts. If the right depends upon an issue which can only be decided upon a trial, the injunction cannot be granted. (*Pine Hill-Kingston Bus Corp.* v. *Davis,* 225 App. Div. 182; *Voorhees & Hobart* v. *Hobart,* 251 App. Div. 111). Where the facts, as in the case at bar, are in sharp dispute, a temporary injunction will not be granted. (*Morrin* v. *Structural Steel Bd. of Trade,* 231 App. Div. 673; *Geed* v. *Braunsdorf,* 277 App. Div. 1001; cf. *Schwamm* v. *Alpert,* 31 Misc 2d 768.)" (*Jaymar's, Inc. v Schwartz,* 37 Misc 2d 314, 316.) Clearly, plaintiff has failed to meet its burden in this regard.

It has been held that "[s]ince there are 'powerful considerations of public policy which militate against sanctioning the loss of a [person's] livelihood' * * * restrictive covenants which tend

to prevent an employee from pursuing a similar vocation after termination of employment are disfavored by the law" (*Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.,* 42 NY2d 496, 499). Consequently these covenants "will be enforced only if reasonably limited temporally and geographically * * * and then only to the extent necessary to protect the employer from unfair competition which stems from the employee's use or disclosure of trade secrets or confidential customer lists", or if the employee's services are unique or extraordinary (*Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp., supra,* at p 499; *Reed, Roberts Assoc. v Strauman,* 40 NY2d 303, 307-308, *rearg denied* 40 NY2d 918). In the case at bar, plaintiff has made no allegation concerning trade secrets and Special Term expressly found that "[t]here is no convincing evidence that the defendant took any * * * customer cards with her when her employment ended". Whether defendant in any other way improperly obtained the information on plaintiff's customer cards presents, at best, on this record, an issue of fact to be resolved at trial. Nor has plaintiff alleged that the services rendered by defendant were unique or extraordinary. Indeed, it has been held that a hairdresser's services are not unique or extraordinary per se (*see, Donnybrook Hairdressers v Schachter,* 32 Misc 2d 204).

With regard to so much of the preliminary injunction as enjoined defendant "from contacting clients of [the plaintiff]", it is well settled that an exemployee who does not possess trade secrets will not be precluded from soliciting the customers of his or her former employer unless the exemployee has acted "wrongfully by either pilfering or memorizing the customer list" (*Reed, Roberts Assoc. v Strauman, supra,* at p 308; *Greenwich Mills Co. v Barrie House Coffee Co.,* 91 AD2d 398, 402; *Leo Silfen, Inc. v Cream,* 29 NY2d 387). As previously indicated, plaintiff has not made the necessary evidentiary showing in this regard so as to justify the granting of the extraordinary remedy of a preliminary injunction.

Any claim that plaintiff will suffer irreparable injury without a preliminary injunction, or that a balancing of the equities favors the issuance of a preliminary injunction, must be rejected in view of (1) the uncontradicted allegation of defendant that plaintiff has already filled her position (*see, Donnybrook Hairdressers v Schachter, supra*) and (2) the great disparity between plaintiff and defendant with regard to their financial circumstances (*Forstmann v Joray Holding Co.,* 244 NY 22, 29-30).

Finally, we note that Special Term erred in failing to require that plaintiff post an undertaking as a prerequisite to the granting of the preliminary injunction as mandated by CPLR

6312 (b). Mollen, P. J., Mangano, Thompson and O'Connor, JJ., concur.