■ DISTRICT COUNCIL 37, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO et al., Appellants, v CITY OF NEW YORK et al., Respondents. [804 NYS2d 10]—

Judgment, Supreme Court, New York County (Marcy Friedman, J.), entered April 1, 2004, which denied petitioner public employee organization's application to annul the determination of respondent Board of Collective Bargaining of the City of New York, inter alia, denying petitioner's request to compel respondent City of New York to implement a merit pay program for certain employees in the City's Human Resources Administration, unanimously affirmed, without costs.

In fall 2000, the City of New York (City) announced a proposal to change the name of its income support offices to job centers, creating a new title series, including job opportunity specialist (JOS) and associate job opportunity specialist (AJOS).

By spring 2001, the New York City Human Resources Administration (HRA) began to fill the JOS titles by staffing from current employees already working in the following positions: eligibility specialist (ES), supervisor (SUP), caseworker, and principal administrative associate (PAA). Those current employees were represented either by District Council 37 (DC 37) or the Communications Workers of America (CWA). However, before implementing the JOS titles, the City held meetings with DC 37 Locals 371 and 1549 and CWA Local 1180. The parties agreed that during the pendency of the representation proceeding, current employees moving into the JOS titles would continue to receive all the benefits of their respective collective bargaining agreements and union representation.

In fall 2001, 200 new outside-hires were employed to fill the JOS positions. The new hires did not have union representation. The employees who transferred from SUP, ES, caseworker and PAA positions, meanwhile, were covered by union agreements which provided that each union will acknowledge the employer's right to pay additional compensation for outstanding performance, and that the employer will notify the union of its intent to grant merit increases.

In February and March 2001, DC 37 and CWA filed petitions pursuant to New York City Collective Bargaining Law ([NYC-CBL] Administrative Code of City of NY) § 12-309 (b), seeking to accrete the JOS and AJOS titles into one of their existing bargaining units. These representation cases were consolidated (collectively referred to as the Representation Proceeding).

A few months later, the City advised the locals that it intended to implement a merit pay plan for the JOS titles only. According to the plan, JOS and AJOS employees would receive up to 20% of their base salary in each calendar year, as merit pay.

On October 25, 2001, DC 37, on behalf of its locals, filed a petition for injunctive relief and an improper practice petition, alleging that the City violated the NYCCBL when it unilaterally granted merit wage increases to employees in the JOS titles without proper collective bargaining.

In its petition, DC 37 alleged that the City had broken its promise to maintain the salary and benefits of current employees transferring to the JOS titles, and also breached its duty to bargain by unilaterally conferring the economic benefit of the merit pay plan for those employees without bargaining under NYCCBL § 12-306 (a) (4). DC 37 also alleged that the City interfered with employees' union rights in violation of NYCCBL § 12-306 (a) (1) by unilaterally implementing merit increases during the Representation Proceeding and that the City at-

tempted to dominate and interfere with DC 37's administration in violation of NYCCBL § 12-306 (a) (2). Finally, DC 37 claimed that the City discriminated against it to discourage participation in DC 37's activities as a bargaining representative in violation of NYCCBL § 12-306 (a) (3).

The Board of Collective Bargaining (Board) decided that HRA's unilateral implementation of the merit pay plan violated NYCCBL § 12-306 (a) (1) because merit increases created a change in the status quo for JOS title employees during the pendency of the Representation Proceeding. The Board also found that the City's implementation of the Plan was unilateral and in violation of the existing collective bargaining agreement pursuant to NYCCBL § 12-306 (a) (1) and (4), which prohibit employer interference. The Board ordered HRA to cease and desist from granting any further merit pay until a wage and benefit package was determined by collective negotiation with a certified bargaining agent.

However, the Board found that the granting of merit increases was not discriminatory pursuant to section 12-306 (a) (1) and (3) because the recipients were not predominantly confined to one job title or union affiliation. It also determined that the granting of merit pay did not interfere with or dominate DC 37 in violation of section 12-306 (a) (1) and (2) because DC 37 did not produce sufficient evidence to show how the merit pay caused domination of and interference with the administration of the union.

On November 29, 2001, the CWA filed a similar improper practice petition against the City. Like DC 37, the CWA sought to maintain the status quo with respect to wages and benefits during the Representation Proceeding. The Board similarly upheld CWA's claim on the basis that the merit pay plan was not properly implemented because it was commenced during the pendency of the Representation Proceeding. As in its determination of DC 37's claims, the Board found that the granting of merit pay did not discriminate against the union nor did it interfere with employee protected rights.

On March 8, 2002, DC 37 filed another improper practice petition claiming that granting merit pay to employees in JOS titles penalized the DC 37 affiliated employees working in SUP, ES, and caseworker positions, since they did not receive merit pay. DC 37 claimed this interfered with its ability to represent its members, violating NYCCBL § 12-306 (a) (1). DC 37 also claimed that granting merit pay solely to JOS title employees and not SUP, ES, and caseworker employees was discriminatory under section 12-306 (a) (3), and that HRA favored members of one union over another.

Lastly, DC 37 claimed that the granting of merit pay to JOS title employees and not SUP, ES, and caseworker employees was an attempt to dominate and interfere with DC 37's administration in violation of section 12-306 (a) (2). DC 37 sought an injunction ordering the City to designate funds to award additional compensation to employees in positions other than JOS and AJOS.

Inasmuch as the Board determined that DC 37 had not presented any new arguments to justify a departure from the earlier finding, it made no further decision, and dismissed the petition.

Petitioners brought a CPLR article 78 proceeding seeking to annul the latter decision claiming that the Board simply reiterated its holding and rationale from its earlier decision. The Board responded by pointing out that an order directing the City to grant merit pay to non-JOS title employees would be wholly inconsistent with the Board's prior order directing bargaining over merit pay.

Supreme Court confirmed the Board's decision and dismissed the petition. The court held that the Board could not order the City to bargain the implementation of merit pay for the non-JOS titles during the pendency of the Representation Proceeding.

Petitioners now appeal on the grounds that: (1) the court improperly confirmed the Board's refusal to order the City to implement a similar merit pay program for non-JOS titles in order to maintain the status quo during the Representation Proceeding; (2) the court erroneously confirmed the Board's decision when the Board ignored the union's request to direct the City to address its failure to give merit pay to employees in non-JOS titles, stating that "no new claims or additional remedies [were] sought"; (3) the court's finding that the Board's refusal to order the City to give merit pay to non-JOS title union workers was erroneous because the Board's decision was not made using a rational legal basis; and (4) there was sufficient evidence to conclude that the HRA gave merit pay with discriminatory intent against the union. Petitioners now argue that a remedy for an improper practice is designed to make whole the affected employees and that the City should pay "agreed-upon sums" to make petitioners whole.

We disagree and for the reasons outlined below affirm the judgment of Supreme Court.

While the criteria and procedures for determining eligibility for merit pay are mandatory subjects of bargaining, the decision to grant merit pay and the aggregate amounts thereof are mat-

ters solely within the City's discretion as set forth in NYCCBL § 12-307 (b). Section 7 of the DC 37 Memorandum of Economic Agreement, which controls the employment relationship between union members and the City, states: "The Union acknowledges the Employer's right to pay additional compensation for outstanding performance."

The Board properly recognized that while it could order HRA to cease and desist granting merit pay, there was no remedy it could offer that would make petitioners and affected employees whole. More importantly, an award of merit pay to those in the SUP, ES, and caseworker positions would have been in direct conflict with the Board's prior determinations on the petitions brought by DC 37 and CWA. In those cases, the Board held that HRA's granting of merit pay to its employees without bargaining over the procedures and criteria during the pendency of the Representation Proceeding was a direct violation of the NYC-CBL. Ordering the City to now grant merit pay would be utterly inconsistent with having ordered the City to cease and desist from issuing merit pay in the first place. A return to the status quo putting JOS and non-JOS title employees on an equal footing would have required rescission of the merit pay awards.

Supreme Court properly found that the Board did not ignore petitioners' requests for merit pay to union members in non-JOS titles since the appropriate relief was already granted: when discussing petitioners' claims of interference under NYC-CBL § 12-306 (a) (1), the Board dismissed the claim because it had already implicitly found such interference existed in its prior decision. Thus, petitioners had already received the very relief they requested, through the cease and desist order issued in the earlier decision.

Under CPLR article 78, judicial review of an administrative determination is limited to the evaluation of whether the determination is consistent with lawful procedures, whether it is arbitrary or capricious, and whether it is a reasonable exercise of the agency's discretion (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 230 [1974]). When an administrative agency is charged with implementing and enforcing the provisions of a particular statute, the courts will generally defer to the agency's expertise and judgment regarding that statute. So long as the Public Employment Relations Board's interpretation is "legally permissible and so long as there is no breach of constitutional rights and protections, the courts have no power to substitute another interpretation" (*Matter of Incorporated Vil. of Lynbrook v New York State Pub.*

*Empl. Relations Bd.,* 48 NY2d 398, 404 [1979]). We have typically deferred to the Board's expertise in applying and interpreting the provisions of the NYCCBL (*see e.g. Matter of City of New York v International Bhd. of Teamsters, Local 237,* 301 AD2d 471 [2003]; *see also Matter of City of New York v MacDonald,* 223 AD2d 485 [1996]). A court cannot simply substitute its judgment for that of an administrative agency when the agency's determination is reasonable (*see Matter of Medical Malpractice Ins. Assn. v Superintendent of Ins. of State of N.Y.,* 72 NY2d 753, 763 [1988], *cert denied* 490 US 1080 [1989]).

In ruling consistently with its prior decisions and discussing the subsequent petitions, the Board acted entirely reasonably. Petitioner's argument that the Board improperly dismissed its discrimination claim is raised for the first time on appeal and need not be considered (*Matter of Wallace v Environmental Control Bd. of City of N.Y. [Dept. of Consumer Affairs],* 8 AD3d 78 [2004]; *Devlin v Video Servs. Acquisition,* 188 AD2d 370 [1992]).

The article 78 petition asserts that the Board "ignored" the discrimination claim and "did no more than reiterate its holding and rationale," and petitioners now argue that the court erred in affirming the Board's decision to dismiss this discrimination claim since it failed to consider that the Board's reasoning was based on the flawed assumption that the 200 newly hired JOS title employees would vote to join the union once the Representation Proceeding is completed.

Petitioners also argue that the Board erroneously found that the granting of merit pay to JOS title employees was not designed to discourage union membership, and that the Board failed to find evidence of discrimination even though an inference of discrimination should have been drawn, considering the timing and rationale for the merit pay award. However, petitioners did not attack the rationale of the Board's determination in Supreme Court, so they may not raise the issue on appeal (*Devlin, supra*).

In any event, even if the Court were to consider these new arguments, they would be rejected because the Board's dismissal of petitioner's discrimination claim was proper. There is a two-prong test to find discrimination in violation of NYCCBL § 12-306 (a) (1) and (3). First, the petitioner must demonstrate that the employer's agent responsible for the alleged discriminatory action had knowledge of the employee's union activity. This element has been uncontested here as the existence of a Representation Proceeding undoubtedly demonstrates that the City had knowledge of union presence in the JOS titles. Secondly,

petitioners must prove that the employees' union activity was a motivating factor in the employer's decision (*Matter of City of Salamanca [City of Salamanca D.P.W. Empls., AFSCME, Council 66, Local 1304C]*, 18 PERB ¶ 3012 [1985]; *Bowman*, Decision No. B-51-87, at 18-19 [1985]). In petitioners' case, there was insufficient evidence presented to prove that the City's merit pay implementation was motivated by DC 37's involvement. The Board properly found that the motivation for the merit pay to JOS titles, and not to the older non-JOS titles, was not to discriminate against the union but to encourage those in the older titles to move into the new JOS titles.

The Board made no factual error or unfounded assumption regarding union membership. The Board held that either of the bargaining units, DC 37 or CWA, would be an appropriate representative and directed an election as to which unit the employees desired, but not as to whether they would be represented at all. Thus, all JOS titles would have been represented because the Board's decision did not allow for a non-union vote.

Further, the timing of the merit pay implementation during the Representation Proceeding does not establish discriminatory intent, per se. Although the City should not have implemented the merit pay during the representation process, the Board was not thereby precluded from reasonably concluding that the City had no discriminatory intent.

For the aforementioned reasons, we have found petitioners' arguments unavailing and affirm the dismissal of their proceeding. Concur—Tom, J.P., Saxe, Marlow, Ellerin and Catterson, JJ.